would be to the injury of the bank, the law presumes that he intended such injury in the drawing of the bill.

The twelfth and thirteenth counts charge the defendant in like manner, with drawing on the 31st day of August, 1875, a bill of exchange upon the Fourth National Bank of Cincinnati, for ten thousand and thirty-four dollars and thirty-eight cents. These two counts are for the same transaction; the only difference being that the thirteenth charges that he drew the bill with intent to injure and defraud the association, and the twelfth does not charge such intent. The instructions which I have given you in regard to the tenth count you will apply to the twelfth count, and that I gave you in regard to the eleventh count you will apply to the thirteenth count.

The fourteenth and fifteenth counts charge that the defendant, as president, and on behalf of the bank, on the 21st of August, 1875, assigned to the Merchants' National Bank of Cincinnati a certain note for ten thousand dollars, made by himself, dated August 21st, 1875, and payable eight days after date to the order of A. C. Johnson, president, without authority from the directors of the Fayette County National Bank at Washington. If the evidence satisfies your mind, beyond a reasonable doubt, that the defendant assigned the note described as president without the authority of the directors, he would be guilty, under this count of the indictment. If this note was in reference to the business of the bank, the general authority given him by the directors might be sufficient to warrant him in assigning the note. But if this note was wholly disconnected with the business of the bank, and was his private business,—had no connection with the bank at all,—he had no right to assign it, as president. That would be without authority of law, and not within his general authority. The fourteenth and fifteenth counts are alike that the fifteenth charges the assignment of the note to have been made with intent to injure and defraud the bank. If the necessary result of assigning the note was to take from the bank the amount thereof, and appropriate it to his own use, and thereby deprive the bank thereof, that would be a fraud upon the bank, and would be to its injury, and the law presumes that he intended that result. The rule as to the weight of proof differs in civil and criminal causes. In civil causes a preponderance of evidence justifies a jury in returning a verdict for the party in whose favor such preponderance may be. But, in a criminal cause, the rule is different. A preponderance of evidence will not warrant a verdict of guilty. The law presumes the defendant to be innocent, and this presumption can only be overcome by evidence which satisfies the minds of the jurors beyond a reasonable doubt that he is guilty. If the evidence fails to do this, the defendant is entitled to an acquittal. The doubt must,

however, be a doubt which arises out of the evidence in this case,—one which is the result of an honest and careful investigation of all the facts and circumstances which are in evidence,—and must be in relation to these a reasonable doubt, one in consonance with reason, not in opposition to it.

As a general rule, in civil causes, the character of the parties cannot be put in evidence. Exceptions are found in cases of defamation and fraud, but in criminal causes it is the right of the defendant to place in evidence his good character, and this is to be taken into consideration with the other evidence in the case; not that, if a person is shown to be guilty, that his previous good character should acquit him, but he is entitled to its consideration as a part of the evidence of the question of his guilt. And it is upon this principle that the presumption is that one who has been uniformly honest and upright will not readily turn from the paths of a correct life, and become suddenly bad. The fact there was found upon settlement a balance due from the defendant to the bank will not of itself justify a conviction, but the fact is to be taken in connection with the other evidence in the case, as reflecting upon charges contained in the indictment.

If the evidence in this case establishes in your minds, beyond a reasonable doubt, that the defendant committed the acts in either of the counts in the indictment, it will be our duty to return a verdict of guilty as to such counts. If, however, after a careful consideration of all the evidence in the case, there is, in your minds, a reasonable doubt, whether he has committed any of said,—any of such acts,—it will be your duty to render a verdict of acquittal.

---

## Case No. 15,484.

### UNITED STATES v. JOHNSON.

[1 Cranch, C. C. 371.] [1]

Circuit Court, District of Columbia. Dec. Term, 1806.

**CRIMINAL LAW — EXAMINATION OF JURORS — COMPETENCY OF WITNESSES.**

1. The court will not ask a juror, before he is sworn, whether he has formed and delivered any opinion as to the case; but leave the party to challenge for favor.

2. A witness is not competent to testify as to the similitude of handwriting, who has only seen, for a few minutes, papers acknowledged by the defendant to be in his handwriting.

[Cited in Talbott v. Hedge, 5 Ind. App. 560, 32 N. E. 788.]

Indictment [against Jeremiah Johnson] for forging a check on the Office of Discount and Deposit at Washington, the said office being a bank established under a charter from the government of the United States. The indictment was under the act of Maryland, November, 1797, c. 96, § 2.

[1] [Reported by Hon. William Cranch, Chief Judge.]

F. S. Key, for the defendant, requested that the jurors might be asked whether they had formed and delivered any opinion upon the case.

THE COURT (DUCKETT, Circuit Judge, absent) refused to suffer the question to be asked, saying, that if the defendant wished to challenge the jurors for favor he might do so.

Mr. Alexander, a witness for the United States, upon being asked by the court what knowledge he had of the handwriting of the prisoner, said that he had, as a justice of peace, seized a book of accounts, which the prisoner acknowledged to be in his handwriting; that he examined the handwriting in the book, which he had in his possession only about fifteen minutes; that he also saw, in Mrs. Cassin's possession, a piece of writing which the prisoner acknowledged to he his; and had, since the prisoner was confined in jail, received two notes from the prisoner; that his only knowledge of the prisoner's handwriting was derived from those circumstances; that he could only swear that the check was like what he had seen.

Key & Dorsey, objected to this testimony, and cited McNal. Ev. 417, (Yates's opinion;) and Peake, Ev. 67.

Mr. Jones, contra, cited Esp. 144; 1 W. Bl. 384.

THE COURT said that Mr. Alexander's testimony was not evidence of the handwriting of the prisoner.

Verdict, not guilty.

## Case No. 15,485.

### UNITED STATES v. JOHNSON.

[2 Cranch, C. C. 21.] 1

Circuit Court, District of Columbia. June Term, 1811.

#### BURGLARY—ENTRY OF STOREHOUSE.

A storehouse, not within the curtilage, but in which the clerk of the owner usually sleeps, is, in law, the mansion-house of the owner; and burglary may be committed therein.

This was an indictment for a burglary by breaking and entering the dwelling-house of Mr. Cassin. The building which the prisoner entered was a storehouse on a lot contiguous to the house in which Mr. Cassin lived; but not in the curtilage; his storekeeper, however, usually slept in it at night.

Morsell & Van Horne, for the prisoner, contended that this was not a dwelling-house; but if it was, it was the dwelling-house of the storekeeper, and should have been so charged in the indictment.

THE COURT (CRANCH, Chief Judge, absent), said that this was a dwelling-house, where a person sleeps at night, and is liable to be put in fear. The storekeeper was the servant or agent of Mr. Cassin. A person may have two dwelling-houses, in either of which burglary may be committed. 1 Hale, P. C. 556; Crown Cir. Comp. 207, 480. The sleeping in a house at night fixes its character, whether or not it be a dwelling-house; for a house which is only occupied and resided in during the day, is not considered a dwelling-house. 1 Hawk. P. C. c. 38, §§ 10–20. On the contrary, if a person takes an inn of court, or a room for the purpose of lodging, burglary may be committed therein.

Verdict, "Not guilty."

## Case No. 15,486.

### UNITED STATES v. JOHNSON.

[4 Cranch, C. C. 303.] 1

Circuit Court, District of Columbia. March Term, 1833.

#### INDICTMENT — ASSISTING SLAVE TO RUN AWAY — SUFFICIENCY OF AVERMENTS.

In an indictment under the Maryland law of 1796, c. 67, § 19, for assisting, by advice, the transporting of a slave, whereby his owner was deprived of the service of his slave, it is not necessary to state what the advice was, nor how it assisted; nor is it necessary to state a criminal intent, nor that the accused knew he was a slave and intended to run away.

The indictment, which was founded on the Maryland act of 1796, c. 67, § 19, charged that the defendant [Abraham Johnson] did, on the 19th of April, 1833, "assist the transporting of a certain slave named Joseph Dozier, the property of Lucy R. Miller, of Washington county aforesaid, from the said county and district, by advice, and by conveying said slave in a gig from said county and district to the city of Baltimore, in the state of Maryland, then and there, thereby depriving the said Lucy Miller, the owner of said slave, of the service of her said slave, against the form of the statute," &c.

The jury having found the defendant guilty, his counsel, Mr. Jones, moved, in arrest of judgment: 1st. That the indictment is vague and uncertain in not stating what the advice was; nor the nature of it, by which the defendant assisted, &c., nor how the advice did assist. 2d. In not charging a criminal intent, nor that the defendant knew that Dozier was a slave, or intended to run away.

Mr. Key, contra. The indictment need not aver a knowledge or intent not mentioned in the description of the offence in the statute. Rex v. Sainsbury, 4 Term R. 457.

Mr. Jones, in reply. It is not sufficient to state the offence in the vague terms of the statute. The act must appear to have been unlawfully done. If the statute be taken literally, a man may be punished for giving a pass to his own slave. 1 Chit. 231.

1 [Reported by Hon. William Cranch, Chief Judge.]

1 [Reported by Hon. William Cranch, Chief Judge.]